Thank you, your honor, and may it please the court. Alex Seamers on behalf of Davina Ricketts. This case is about a school district standing idly by while Davina was racially harassed by her peers. She was called an angry black girl after she alleged discrimination when she and other African-American students had been excluded from their student council ballot. And right after all this unfolded, the school authorized a newspaper with articles targeting Davina and full of racially insensitive jokes. But the newspaper is just about as juvenile an effort as you can imagine. It makes fun of everything. Sure, your honor. I mean, I think that the newspaper is certainly part of the whole picture for the severe and pervasive harassment here. You read about it in your brief, it sounds like it's a paper that's focused on her, but in fact it's makes fun of President Trump and just about everybody else. Sure, it's passed off as an April Fool's joke, your honor, but this is right at the same time that all of this student council election is unfolding. I mean, it's dated April 2016. The initial election here was March 7th, and the re-election was March 24th. But this was a monthly student newspaper, and so the articles were certainly being written right as all of this unfolded. The student council election is referenced in multiple places, and I think that there are articles that certainly target Davina. I also think that, you know, you mentioned it makes fun of everyone and it's just jokes, but it can't be the case that a harasser can make a joke and then say, hey, don't be offended, I'm just joking. That can't be right. And so, you know, we think that the newspaper certainly informs this court about what the sort of culture was at the school, and that it contributes to an environment where these sort of racial jokes were acceptable. And I think that's pretty evident on just about every page of the student newspaper. I mean, on the first page, you have a statement about they take our whites. On the second page, you have a statement about calling people illegals and lowlifes. On the third page, you have, you know, the BET awards being the real culprits of discrimination here, and questioning the sanity and sobriety of people who are making claims about discrimination, who are alleging discrimination, which is exactly what Davina did here. Can I ask you a question? I'm thinking about sort of the notice and then the response elements of student-on-student harassment claim. Was there, did the plaintiff or your client complain about the newspaper? That's not alleged, is it, in the complaint that there was a specific complaint about the newspaper to a school administrator? There's no allegation that there was a specific complaint about the newspaper, but I think the key inquiry for actual notice is whether the school knew that the newspaper existed. They know the newspaper exists, but I do wonder whether for something, like why any school still allows students to put out a satirical newspaper is a mystery to me, but I do wonder whether when it comes to, you know, trying to figure out what is between the lines of a newspaper, like it, you have to do just a little bit of constructing to get to your inferences about the newspaper, and so obviously the administration knows the newspaper is out there, but they may not be on notice of how it could reasonably be construed as targeting your client. Well, a couple of points there. I don't think there's a, I mean, at the pleading stage here, and we're at the pleading stage with a pro se liberal standard where this court is supposed to construe Davina's pleading stories, the strongest arguments that it suggests, and where the Supreme Court has said that pro se litigants are supposed to be held to less stringent standards, so I think it's certainly plausible that when you read this newspaper and you think about the timing here, that these articles are referring to Davina. I mean, is the newspaper a big part of your case? I feel like you've spent half your argument time now, and we started it, in fairness, but... Well, I certainly think that it's part of the whole picture here, but it is important that this court steps back and looks at the whole picture. This court has repeatedly said as much in the Jennings case, in the Laurent Workman case, to say that you have to think about the cumulative effect of the harassment and the totality of the but it's certainly not the whole picture. I mean, you also have the racial comments where Davina was called an angry black girl. This is at JA 119 and 120. Comments that black kids caused a re-election, that no one was going to vote for a bunch of angry black girls. And you've got the cockroach article. We have the cockroach article as well in the newspaper, which we haven't talked about yet. Clearly, I think, refers to her. I think so too, your honor. I mean, it's joking about the diversity that Enloe is so proud of. It references book bag tags, and she had her... And it says it's a cockroach from the African-American part of Raleigh. Yes, Southeast Raleigh is well known to be a predominantly African-American neighborhood, and it references Southeast Raleigh as well. So we think there are a lot of factors that suggest that that article in particular is also targeting her. Counsel, I want to, if you don't mind me sort of skipping you ahead, because I just want to make sure we have time. Assuming, just assume for the moment, I think that there is, when you look at everything together, there's enough to plead adequately, severe, pervasive, and offensive race-based bullying and harassment of your client. So this is what I'm hung up on. And I will also assume that the school is on notice of that, because your plaintiff's mother sends an email saying, my daughter is being racially harassed. So what Mr. Lyons says is, I didn't know that. Please tell her to come see me or some other administrator so we can address this. Why is that a clearly unreasonable response? Well, I think it's a little rich to say after that someone has made a report of harassment to you, to say, I haven't heard of any reports of harassment. So the idea that this is some magic. It's clear he's saying, I have not before this. Please have your daughter come see me so I can address it. Sure. I mean, that's putting the burden on a 16-year-old high school student. It is. And I'm not saying it's best practices. Perhaps something more proactive would have been better. But clearly, you want us to hold as a matter of law, like that's just a clearly you cannot. And also, it's not as a specific allegation, like a particular thing that maybe someone could proactively look into. It's just, there is racial harassment. And so the principal is saying, OK, I need to know more about that. Well, I do think it's clearly unreasonable for the principal not to go and talk to the student who says that she's being harassed. I mean, if my kids were in school and I said, hey, my son is being harassed. And the principal said, well, have him come talk to me. I'd say, why don't you go talk to him? He's the one who is suffering here. Well, but that's not deliberate indifference. That's the point. Well, but I do think there are allegations in the complaint that the school didn't do anything about a number of the pieces of the puzzle here when it comes to severe and pervasive signs and all that sort of thing. They didn't do anything in response to tearing down the signs. They didn't do anything in response to the mock polls, excluding from the mock polls. I thought the complaint alleges that she complained about the exclusion from the mock polls to another student, not to the administration. I mean, it doesn't ever allege that the administration was aware of that. There is an allegation that she did complain about another student, but also that the school was generally aware of the social media accounts. But these are the, I think, the new or should have known allegations. And I am just very concerned that that's like exactly what does not state a claim under Davis, sort of a negligent failure to know what's going on in your own school. No matter how compelling that may seem, I don't think that's enough under Davis. Sure. But there's also allegations that they downplayed the bomb threats as just pranks. They published the newspaper and there's no response that they did anything to that. We point that out in our brief and they don't respond to that point. So there are a number of things here where the school didn't take any sort of action. Now on the ballot exclusion itself, the school did call for a re-election, but it put the same people in charge and there was a clearly superior alternative, which was just having people re-vote. The Second Circuit's case in Zeno says that, this was after a jury trial, it says that the jury was entitled to weigh the alternatives that were presented to the school. Can I ask you a question? This is just a completely factual question. A thing I can't, I just don't know from reading the story and the complaint. So the point is, as I understand, like really the gist of the allegations is after this girl is excluded from the ballot, instead of just putting out a new corrected ballot, the school insists on having a new three-day campaign period. And that's the thing that makes everybody so angry, that there's going to be a new three-day campaign period. Why does everybody, I feel like I'm missing, and I'm not even sure this is directly relevant, but I'm trying to get my hands on what happened here. Why does the student body arise as one in fury about having a three-day campaign period? What's the big deal? Well, I do think that there are allegations that there was anger before that point. I mean, the tearing down of her posters and her book bag tags, the exclusion from the mock polls. But there's a big thing about how this was so the wrong choice for the principal to make, because it made everybody furious enough, to the point where people are phoning in bomb threats. What's the deal with this three-day campaign period? Well, I'm not fully sure, and I don't think that's totally clear, but I do think when, you know, you're a high school student and you put a lot of effort into campaigning, you make these materials, you make a speech, you get up and you're, like this is the focus for a long time. You're maybe even prioritizing this over your homework and your other responsibilities, extracurricular or otherwise, that to go through this all again, to push it down the road three weeks, in an environment that's already pretty tense and that there's already harassment occurring, I think it just cranks up the volume even more, and it makes people really, really angry. I think a related component of that is part of why it makes people angry is because Davina alleges that this was discriminatory. And that perfectly describes our retaliation claim, which we haven't talked much about, but there's no dispute that Davina said this looks like discrimination. Well, who retaliated? What's the causation? I didn't This court's decision in Hurley says that retaliatory harassment can be a materially adverse action for purposes of a Title IX retaliation claim. So this is the retaliation on online or the harassment? Online, in person, the bomb threats, the newspaper, the whole package here, I mean a large portion of it. The newspaper, that came after she drew this to people's attention? Yes. All right. So whatever you think of this conduct, I mean, we don't think that you can untangle the anger at the re-election and Davina's race. We think those two are bound up together and are part of the whole picture. But even if you think that you can, that you can split these two things in half, that you can split anger about the re-election and racial harassment, you've then perfectly described our retaliation claim. Is there a limit on how the school authorities can control out-of-school speech online? Sure. I mean, so part of the Title VI discrimination claim is that the school has to have substantial control over the context and over the harassers. I'll note that my friends on the other side don't contest this apart from anonymous comments on an online news article. But apart from that, they don't contest substantial control. The inquiry there primarily focuses for control over the context, focuses on the school's disciplinary authority, and there are allegations in Davina's complaint to the effect that the school did, in fact, exercise disciplinary authority on a number of occasions, whether it's arresting African-American students for a water balloon prank the year prior, or whether it's actually disciplining students for their use of social media in another school relating to derogatory racial comments a year later. So there's really no dispute that they exercise substantial control over the context or over the harassers either. If this case gets remanded, will your firm represent her in it? Your Honor, I think yes would be the answer there. I'm not entirely sure, but I have discussed it with the firm, but don't have a definitive answer on that yet. But we'd ask that this court reverse and remand with instructions for Davina to amend her complaint. Thank you, Mr. Seamus. Mr. Rawson. Good morning, Your Honor. May it please the Court. Steve Rawson here on behalf of the At its core, this appeal asks this court not only to countenance, but to encourage district courts to violate that fundamental axiom that district judges should not act as advocates for pro se plaintiffs. What plaintiffs seeks here goes far beyond a liberal construction or judicial solicitude and into the realm of legal services. The 12b6 standard allows for this court to make inferences from facts that are pled, but not to rehabilitate a complaint by assuming facts they're not. The board's theory here is... We're making all inferences in favor of the non-moving party, right? Your Honor, reasonable inferences from the facts that are alleged in the complaint, yes. All inferences, right? Not all inferences. Not all reasonable inferences, right? In favor of the non-moving party, right? So we are at... Is that right? I want to make sure I get your... I understand that phrase to be more... I know you understand, but is that right? It is correct that this court should make reasonable inferences. In favor of the non-moving party? In favor of the complainant in this case, yes. Right. Yes. But two things have to happen there. One, they have to be inferences, not inventions. And two, they have to be reasonable. So let me... Allow me an example from the complaint. I don't think this case has much invention at all, but go ahead. You tell me what we have to... The word there comes from... Tell me what... Tell me... You tell me what we have to invent about this case. Yes, Your Honor. So if you look at page 50 of the plaintiff's brief, and I'm going to read a statement here. Her sudden drop in grades occurred shortly after the election period, when she had suffered from a concussion. And one of the teachers who dropped those grades was an English teacher, like Baralik. Baralik is one of the named defendants and is an English teacher who ran the election. A reasonable inference then is that Baralik had told this teacher about Davina's complaints and that the dropped her grades because of that fact. There are so many steps that this court would have to take between Baralik, who ran the election, is an English teacher, and a different English teacher who has Davina... This is about the retaliation claim? All right. This is in the retaliation section. Let me ask you a question about the retaliation claim. Yes, Your Honor. Because you don't have to do any inventing or anything. Tell me if I'm misstating the chronology that is that looks like discrimination. So that's her sort of protected complaint. Instead of just having a new election, instead of just fixing the ballot and rerunning the election, principal says, no, we're going to have a whole new election, a whole new campaign period, and each candidate will have to sort of qualify themselves again. And then, and this is the part that we're crediting all the allegations, Mr. Lyons sends a false letter to Davina or to the parents saying she's not going to qualify for the new election because she has more than 15 unexcused absences. That turns out not to be true. How, and it's right proximate in time, why is that not just on its face enough to plead a retaliation claim? Several reasons, Your Honor. First is, was this material adverse, materially adverse, that is the second element of retaliation. And the question is, would it be enough to deter a reasonable student from complaining again? And I got to say, when I was in high school, if when I complained, the principal made up a false accusation about me, mailed it to my parents and said, the one thing I really want to do is be on this ballot. I can't be on the ballot for a made up reason. I would really hesitate before I brought another complaint to that principal. Your Honor, I would push back a little bit on the characterization of the made up allegation and that they sought out something, a false statement. It was an incorrect letter and it was immediately corrected. It was immediately corrected, Your Honor. So, and it is, as far as the complaint goes, there was a letter, they immediately said, excuse us, this doesn't apply. And the school said, you're right. Our apologies. You're back on, you know, you're eligible. So, and then we see throughout the period here that Davina is advocating for herself and the school is being responsive. So, again, to go back to that example here with the retaliation. We have cases, I mean, they are in the Title VII context, but I'm not sure we would do it any differently, like the Laurent case, where false reprimands, we do count that, even though you were able to get out from under them because they are false. The fact that they're false doesn't make it better, it makes it worse. So, Your Honor, again, there's, I think, a distinction here between something that is advertently false and something that is a mistake that gets corrected. So, a reprimand that's coming from one supervisor that... But how do, we're on a motion to dismiss. Who knows whether it was an inadvertent mistake or not? That's the whole point. Well, again, Your Honor, I think this goes to what we have to read into the complaint in order to get from the facts that are pled to the inference of an element of the claim being met. So, in terms of discrimination, if you look down each of the aspects of this case that are discussed, each of the acts that are talked about, we have, obviously, being left off the ballot. That is the central one and the only one, frankly, where there's any credible allegation in the complaint that the administration was aware. Clearly, they were aware. And then they took the step of saying, this was not a fair election, we're going to have another election. And the standard, if we are going to apply the standard, which this Court has not yet done and does not need to do today in terms of except adopting that circuit-wide, but looking at that analysis as the District Court did, is it clearly unreasonable to run a new election when the first one was not fair because nine candidates were left off the ballots? No. That is not only not clearly unreasonable, it's clearly reasonable. And it is not up to the plaintiff to decide the remedy. And this Court has been clear on that. If we then look at some of the other allegations here and say, do these connect, right? Is there any way to get from the fact that's pled to an inference of discriminatory intent, retaliatory intent, any of the elements, material adverse, we look at the cheerleading allegations. She was alleged that after this period, she was then left off the cheerleading team. But she was left off in her own pleadings, was left off the cheerleading team her senior year. This election occurred in her sophomore year and she was on the cheerleading team in her junior year and that again is in the complaint. So we would have to assume, this Court would have to assume that the cheerleading teacher not only heard about this at the time of the election, but left her on the team for the junior year and then got mad about it. Can we maybe jump ahead to the other one that was very proximate in time, which is the two teachers who say they won't give her the, I can't remember exactly what it's called and there's some dispute about is it a reference letter or just sort of a check. But two teachers say they won't do it and she also alleges for no sensible reason. So what besides that do you have to allege for retaliation at the motion to dismiss stage? So in this case, Your Honor, this is a situation where the attachments to the complaint need to override the complaint itself. As you know, when an attachment to the complaint that's incorporated into the complaint disagrees with an allegation or disproves an allegation in the complaint, the document that's attached controls. And if you look at Joint Appendix 191 in an email, Mrs. Ricketts, who is corresponding with school officials and with Mr. Lyons, the principal in this case, she says, I hope the issue regarding the LOR's letter of references is near completion. This is a matter outstanding since January 2016. January 2016. The letter of reference issue started two months before the election, the protected activity, etc. So while the allegation in the complaint is that the request came in March, it is clear from the Joint Appendix that that has been happening from two months earlier and it has absolutely nothing to do with the election. But I think we're looking for like absolutely irreconcilable things before we say that the allegations and the complaint are overridden. And I don't really understand a reference to the issue to necessarily be, and that's when those two teachers said they wouldn't do it. But you think the context makes that clear? If I keep reading, Your Honor, what the parent says, we're going to need specific answers why two teachers refused to provide a letter indicating our child's academic abilities, especially when these types of requests are performed for others. Thank you for your prompt follow-up with the honors chemistry teacher. He's a great staff member at Enloe, etc., etc. This is clearly about the two teachers and she states that that has been outstanding since January. They were complaining about it long before the election and the principal was addressing it with the chemistry teacher before the election. Again, if we look at the International Baccalaureate Diploma allegation, the plaintiff would have you believe, based on the allegations in the complaint, that a scorer of her essay who lives in a different country and is not associated with the school and is not identified in the complaint is the source of retaliation against her for a student council election. Again, this court would have to assume facts that are not present. That one, we had the protected conduct. Two, that someone communicated to the IB scorer what had happened. Three, that the IB scorer cared. And four, that the IB scorer then lowered her essay score beyond below what it should have been in order to keep her out of that program. That is far beyond what this court asks for in judicial solicitude. That goes from liberal construction to literal. But do we know what, and perhaps maybe none at this point, we don't know, but do they assist students to make an appeal or to question that normally? In terms of what is available in the complaint, we have only that there is an International Baccalaureate Ombudsman who can receive such complaints and that the parent was in touch with that person for a period of time. Do we know whether the student or the school and teachers at the school helped them, other students? We do not have those facts, Your Honor, at this stage. At this stage, we don't, but it may be the case that other students get assistance. Let me help you with that. This is how you make your complaint and ask for a review of the scoring, because it was one point deficit, I believe, right? That is what is alleged, Your Honor. Do we know whether or not they help other students? That is not in the complaint. And again, Your Honor, in order to show this kind of disparate treatment, the plaintiff has the burden of pleading that other students would receive that type of help. That does not appear in the complaint, and this Court is not at liberty to add that fact to the complaint in order to complete the chain of logic from pled fact to inferred deduction or conclusion. And that is the, that is the, I think, illustration here of the problem with this complaint, is that there's lots of allegations, mostly conclusory, and a few facts. And as you read through the brief, Plaintiff's Counsel asks this Court to build the bridge from fact to conclusion over here. And while we are solicitous of pro se plaintiffs, there is no question that they are entitled to a liberal construction. They are not entitled to this Court assuming facts into the complaint that are not there and are not suggested. This Court's precedent, other courts, the Supreme Court, have talked about with pro se plaintiffs. The idea here is to not dismiss because of mislabels, unsophisticated language. But that does not change, and this Court has said so, that does not change the Twombly-Iqbal standard. They must have the factual enhancement necessary to show that the right to relief is plausible, not possible, not conceivable. That was the Gibson standard before Twombly-Iqbal. It is not about a conceivable right to relief, but a plausible one that is probable. And we do not see those here. For example, you said that it was reasonable to start all over again, correct, with the election? It was reasonable to call a new election, yes, Your Honor. That kind of discretion is given, and the courts are deferential to the schools in terms of the remedy. Why also was that reasonable? I mean, these are students, they're there to learn, but obviously they're running for an office, but their anxiety is involved in preparing. Why wouldn't you just the next day put the students who were admitted and have the election? I think that is a fair question, Your Honor, but it is not a question that determines the legal analysis here. Certainly there may have been a better response. That is not an allegation that this is the best. It may have been a reasonable one, but that one doesn't seem very reasonable. To run a new election, to allow the students who were left off the ballot time to put back together their campaigns. Why do you need a campaign? You already done the campaign. I just want my name now so they can click my name. Click. I understand, Your Honor, and if I were in that school, I might say yes, that is a better response, but the question is not. The question is what? The question is whether it was clearly unreasonable for the school to restart the election and give all the candidates again a clean slate. Well, you know, it was that you had some casualties, didn't you? Because three of the black students didn't enter the new campaign, didn't they? It is alleged that some students chose not to pursue the second campaign. Some. Go ahead. DeBruno was originally told she couldn't do it either. So when you put all of that together, it really does start to seem like not the most reasonable response. Again, Your Honor, I think there are aspects of the allegations that can point to we can question whether this was the best way to go, whether there were consequences to other students about the way this was handled. But the question fundamentally for this liability standard is whether it was clearly unreasonable. And we only even reach that in the deliberate indifference element. We have to get through the first three elements of Davis if we're going to apply Davis before we even get there. And so, again, I think it is important and plaintiff has criticized the district court judge for picking apart the complaint to look at different allegations and decide. But I think it's really important that this court do exactly that. We cannot just say you threw a lot of things at the wall. We're not really allowed to pick at them. And there's a lot of it. So this passes muster. Right. What the district court said in very solicitous fashion after allowing an amendment and looking at it and saying both individually and together, these do not reach the standard. The district court said this one fails this element. This one fails this element. So, for example, I wanted to address Judge Gibney's comment earlier that the cockroach story clearly, as you stated, clearly referred to her. And I think that is not correct, Your Honor. And I want to address that. This story does not reference any student, the cockroach coming from Southeast Raleigh. In fact, it says that she was coming in as a transfer, that she was taking the place, she being the cockroach, I should say it, that taking the place of a fly that transferred to Southeast Raleigh, which is another high school in the school system. So this is not about identifying the source of any person. The rest of this, it talks about what clubs they're in. The cockroach says, I'm in mock trial, food arc, and Jewish club. What's up with the Jewish club, the cockroach being in the Jewish club? I mean, it's not in this case, but that is, there's a long and vile history of Jewish people being referred to as cockroaches. Absolutely, Your Honor. And I think this goes to the newspaper being a distasteful satire in a number of different ways. There was discussion briefly of, I think, of the use of the word lowlifes and illegals in one article, and this is on JA 162. That is a story about underclassmen sneaking off campus for off-campus lunch. It's not about the wall at southern border. It's not about Hispanic students. How do we know that? Because the article itself talks about underclassmen leaving campus, and the upperclassmen are advocating for building a wall. So again, this is a political satire. It may be tasteless, but there is nothing here that says this is about Davina. She is not in the mock trial, as alleged. She's not in food arc, as alleged. You think this is just teasing, right? I'm sorry, Your Honor? You think this is just teasing? That's what the district court seems to be feeling. This is teasing, right? To the extent this is directed at any student, individually at all, which Davina does not appear in this newspaper in any way. I think what we're looking at is a number of students throwing around stereotypes about a school that is not particularly clean and has a large population of cockroaches, literally. But we're also looking at a series of articles in the midst of a presidential campaign in April of 2016 that is skewering, frankly, the conservative side of the political aisle. Talking about Ted Cruz's booger is one of the authors. The discussion of making Enloe pretty good again, etc. This is satire through and through, whether or not it's tasteless. But I did want to finish that point Judge Gidney. If you take this whole article about the cockroaches on JA-168, there is a single line that refers to student council. And this says nothing about Davina. But the rest of the article makes clear that this is more a satire of the school, and its programming and cleanliness, and certainly not directed at Endy. What about the reference to an angry black girl? So, Your Honor, there is no question that, as alleged, there were some inappropriate statements made by students. And the question then for this Court is, first, do those arise to the level of severe, pervasive, and objectively offensive? This Court has, in general, held that to be a fairly high standard. And so examples of cases that have met that standard are ones where profanity is directed at somebody, where racial epithets are directed at someone repeatedly over a period of months. We have allegations of a couple of statements in the hallway that do not involve that level of language, that level of offensiveness. Are these inappropriate? Absolutely. Absolutely. And if it's happened, should those students, if it had been made aware to, if the administration had been aware, can that be disciplined? Sure. And it should. Wasn't the student made aware when Davina's, I think it was Davina's mother, sent, I mean, the email is attached to the complaint saying, literally, my daughter is subject to racial harassment. So the email in question says, my daughter is being harassed. And I think as you asked earlier, Judge Harris, of opposing counsel, the question then is when Principal Lyons is made aware of that by the parent. He says, that's the first I've heard of it. Can you ask her to come talk to me? This is a high school with 2,600 students. The principal is going to need for high school students. Now, if the student was a kindergartner, maybe we assess that a little differently. And we need to call a kindergartner down. They're not somebody who's going to advocate for themselves. But a high school student who's running for student counsel, and as alleged, has a reputation for standing up for herself, the expectation that she would come and talk to the principal if she has these concerns is very reasonable. So again, we're looking at that clearly unreasonable. Did Principal Lyons say, I don't believe you. I'm not going to do anything about this. Go away. No. The principal said, I hadn't heard that. Can you please have these students come talk to me? I would like to follow up. Have these students come talk to me, right? Yes. Have her come to you. Have her come to me and talk, and I will absolutely follow up. That is the statement that he makes here. This is on Joint Appendix 187. In one of your emails, you stated your daughter and others are being harassed. I have not received any reports of harassment. Please ask Davina and the others to come see me or another administrator to discuss this so that we can follow up. That is the first step in an administrator responding to a concern. And with the letter about you're not qualified because of too much time missed, he didn't say anything about come to me and let's talk about attendance or anything like that. Just said you're disqualified from the election, being elected, correct? Is that right? It is correct that a letter went out. It was also, in terms of the allegations, it is also alleged that immediately Davina and her mother provided information that that letter was incorrect and what did the letter say? Didn't the letter say what the finding was and what the result would be or is? The letter, as alleged, stated that she had 15 or more absences and that therefore she would not be eligible for the election. It didn't say anything about come talk to me about this. Let's see if this is correct. But yet when this other thing said, oh, come talk to me over here, the hammer comes down in the letter. This is what we find. The result, you are not eligible to run. Where is this? It's some disconnect, isn't it? I don't think so, Your Honor. I know you don't think so, but we're not telling what you think in terms of the standard in terms of a motion to dismiss. Not by what you think. The standard, Your Honor, again, goes if we're going to apply the Davis standard, is the question of was this severe, pervasive, and objectively offensive? Was there actual knowledge? You don't think being an angry black girl is severe and very... Your Honor, that does not compare to... I've asked you a question since you tell us what you think now. I am asking you what you think now. Do you think you don't think that that's hurtful? Particularly in terms of a teenage black girl, in terms of like, you know, you're an angry person. Or even comments about, this is not in this case, but even comments about her hair. And just in general, not the person here I'm talking about, general comments like that. You know, you don't understand how... You don't believe that that could be very debilitating in terms of your self-esteem in those years? That can absolutely be hurtful, Your Honor. That is not in question, and I don't doubt that whatsoever. But you don't see that angry black girl is? That it's hurtful, Your Honor? Yeah, that it's hurtful. Absolutely that it's hurtful. I absolutely agree with that. That it's hurtful and it's inappropriate, and had it been made aware, had the administration known of it, that it should have been disciplined? Absolutely. Does it rise to what this court has considered to be severe, pervasive, and objectively offensive? That's an open question. This court has not... What we found is cases that are being called a porch monkey was severe. Yes, Your Honor. Yes. But again, that's only the second step in four, and we don't have actual knowledge. There's not an allegation. Can I stop you on the second step of four? Because I think the district court did find... I can't quite remember the way the flowchart looks, but maybe it was as to the post-exclusion racial bullying, that that was not sufficiently severe, pervasive, and objectively offensive. And it did seem to me that at least at that step of the analysis, it didn't seem like the district court was considering that language in the context of the stuff that had allegedly come before, the exclusion from the ballot and the ripping down of the posters. And it really did seem to me like that was an error, that you need to put everything together and ask whether this course of treatment by fellow students was severe, pervasive, and objectively offensive. The district court, as I understand it... I say I'm well over my time. May I answer your question? Thank you, Your Honor. The district court, as I understand it, likened the comments in the hallway in passing that are alleged to the type of teasing and name-calling that this court and others have called inappropriate, but not rising to that level. So if we were to affirm on that ground, we would effectively be telling every school in the circuit, right, there can be brought to your attention allegations that this black girl was left off the ballot when she was running for student council and was being racially harassed by her fellow students, and they don't have to do anything, because that is not a big enough deal to require any response at all. That seemed... I mean, would you have us do that, I guess, is my question. No, Your Honor, I would not have you hold that there is a specific standard that needs to be met. It is absolutely... But would you, but do you think, I read your brief to be saying we could affirm on that ground that this was not sufficiently severe, pervasive, or objectively offensive? And I guess I am saying, assume with me, and I think this is correct, if we did that, we would be saying that this level does not require any school response under Title VI. I think we would inevitably be saying that, and you do ask us to affirm on that ground, right? Yes, Your Honor, so the response there would be that this particular allegation, and again, the district court eliminated others earlier, either because they had been responded to or because there was some other flaw in the allegations that did not allow a reasonable inference of the relevant element, that that particular set of some students saying a few offensive things in the hallway, that alone was not severe, pervasive, objectively offensive. But if this court were to find that it took the full course of conduct and determined that there was enough there to reach that second element, we still have no allegation that the administration was aware of those statements in the hallway, of the things that were yelled. There is no allegation that they were aware... But the mother said in the email, my daughter is being racially harassed. The mother said... That is what it says. It is attached to the complaint. And I know that the principal writes the email back, he skips the word racial, he just says harassment. But I mean, are you alleging that the mother did not say, my daughter is being racially harassed? The... And this is Joint Appendix 181, and again, I apologize, I'm well over my time, am I all right? The allegation at the top of Joint Appendix 181, they are being accused of the cause for the start of the election, is one of the factual things that she states. She talks about the blame and pressure transferred from the administration to African-American candidates. She says it, and this is on 179, it's our children being targeted for anger over something they did not cause. These African-American students who ran as candidates are currently being blamed for the start of the entire process. And then on, I think this is the quote that you were referring to, Your Honor, on 182, my daughter and others involved are being harassed. So the parent has made these statements, and without any sort of factual enhancement there that would tell the principal, here's what is actually happening. These things were said in the hallway, this was being done online, here's examples. And what the principal responds is, I hadn't heard that, please have them come talk to me so I can follow up. And the question for this court, and I think this is where you can affirm without going into that concern of yours around setting a lower bar on severe, pervasive, or objectively offensive, as you can say, that was not a clearly unreasonable response by the principal. So you're saying that that goes to the deliberate difference parole? The principal's response email does, yes, Your Honor. There are multiple stages here, and getting close or even perhaps surpassing one of those elements does not a sufficient complaint make. This is about reaching that plausibility standard of alleging the facts that are going to give rise to the inferences of the elements of the claim. Those are not here. And we would ask that this court not countenance a complaint making a number of the allegations. The principal would have had some idea that race was involved, right, some issue of race was involved at that point, about the very fact that the people left off, right? There were, yes, there were other students who were not black who were also left off, and that appears in... Students of color, all of them? No, Your Honor. There were white students as well, and that appears both... But all of the black students were left off? The four, as alleged... That's all? No, Your Honor, again, only for the junior class ballot. So over the entire election, it was not. As alleged, all of the black candidates for the junior class were left off, that is correct. But there were African-American candidates who were on the ballot generally. There were white candidates, Hispanic candidates, Asian candidates who were left off the ballot, a total of nine, I believe, and... And she was never told that she couldn't be on the, be a candidate, right, before the, before the ballots came of the ones that were erroneous, left her off. That's correct, she qualified, and then there was the mistaken letter which was corrected, that's correct. Right, but she was never told that she was in the issue of her qualification before that, or was she? Not as far as we know in the pleadings. That came after they opened it up for another election. When they reviewed the entire process and sent out those letters about eligibility, and then corrected hers, that's correct. But she missed all of that time between the period where they found out that she was left off for the next election? I'm sorry, I don't, I'm not sure I understand your question, Your Honor. You said that the time they said they found that she had, they alleged, apparently, that she had missed this time. She, if she missed, if that was correct, that would have been before the first election, correct? The first ballots went out. If, right? The first ballots went out. The calculation had, those days that they had errantly calculated, those existed before she was on the first ballot, right? That is my understanding, Your Honor, yes. So it wasn't until they said, well the remedy is not to just go ahead and put you on the ballot, but instead to open the whole campaign, right? That's correct. It was between that time, then the letter came to say you're not qualified. That is correct. The letter came between the two elections to say, I have a record of you having too many absences. They responded and said no, they were excused, and the school corrected it. That's correct. But all their research just came up, and that sort of, I guess the proposed remedy would have, would hurt her, wouldn't it? The proposed remedy would not hurt her. No, it would have, wouldn't it? Because it said, if they had said the next day you're having it, I mean, I'm just interested in the timing. The letter came after they'd made a decision that we're going to start all over again. That's correct, Your Honor, and part of starting all over is re-qualifying the candidates, checking that they're eligible. She received a letter that was mistaken, there's no question about that. But didn't they do that before, that check, make sure everybody was eligible? They probably should have, Your Honor. No, no, no, didn't they do that? I don't know, Your Honor. But won't you have to assume that they did, for this record? Do you have to assume that they did? Yeah. It is an equally fair assumption that they did not, and should have, as part of a election process that had flaws in it. You want to turn every inference in your favor. I don't know that that is in our favor, Your Honor, that he didn't check it the first time and did the second time. I wouldn't suggest that was in our favor at all. Yes, it is. But in either case, you can assume that they did it the first time and that they did it mistakenly the second time and corrected that mistake. That is what is in, that's on the face of the complaint. I want to just go back to the reasonableness of the response when this is brought to the principal's attention to say they should come see me. Even if that was a reasonable response at first. I think it is after that when Davina's mother emails failure to inquire and address the racial tension, comments, and harassment. So I think the racial modifies harassment there. Because the result of the re-election announcement was negligent and ignorant, I cannot believe that you expect any student to confront you instead of vice versa. I mean, at that point, is it still reasonable for the principal, I'm sorry, and I'm on page 189 of the joint appendix. At that point, does it remain reasonable? I mean, I feel like the principal has now been told she's not coming to you, you go to her. And it's still reasonable for the principal to say, you're telling me she's being racially harassed for whatever reason, she's not coming to me, and I guess that's just where things end. The principal specifically, as you noted, the principal specifically asked for Davina to come speak to him. The parent follows up several days later, I want to make sure I get my dates right, three days later, with a four-page email, one section of which she criticizes the principal for making that request, certainly. The fact that the principal, at least as alleged, did not then go and find Davina, no, I do not think that is clearly unreasonable when the principal has made that invitation available, and these are high school students that have the capacity to go and bring a report, or to another administrator, which was also part of the principal's response, to any administrator that you're comfortable with out of this school of 2,600 kids, that you can come speak to one of us and we can follow up. That is not a clearly unreasonable response. And then we haven't talked about it at all, and then I'll stop, is that the school then conducted an internal investigation of this through its diversity and equity office. Again, can this be said that it was clearly unreasonable the way they handled this? No. And so we would ask this court on the basis of the district court's opinion, and in any of them, to affirm the dismissal below. Thank you, Mr. Rawson. Thank you very much. Mr. Siemens. Thank you, your honor. Just a few points in response, a couple of small ones to start. First, Judge Harris, you asked about being racially harassed, and we looked at JA 182. So the statement is, my daughter and others involved are being harassed. The very next sentence is, you have a racial divide on your hands, and it's nothing new at Enloe. I think that's fairly red to put the school on notice that this harassment is racial. Second, we referenced the cockroach story a little bit, and their apparent defense of this is, well, it's anti-semitic, and it's not targeted at Divina. Oh, that's okay? Yeah, first of all, I think it can be both, and second of all, I think that's indicative of the culture at the school. Also, we talked briefly about deliberate indifference. I think I would just point this court to Hurley, where they said that actually listening to the students, holding like an open forum and listening, was not enough to get around accusations of deliberate indifference. And so if that's right, if actually listening isn't enough, then merely offering to listen doesn't cut it either. Finally, just on the pro se standard and the idea about giving Divina the benefit of the doubt, I think defendants want to limit liberal construction to formal deficiencies. I think that's very clearly wrong under this court's precedent and Supreme Court precedent. Erickson itself was a case that involved deliberate indifference in the Eighth Amendment context, and the Supreme Court there specifically reversed because the district court said the allegations were too conclusory. It wasn't about formal deficiencies at all. And by the way, Erickson referenced Twombly. It was decided two weeks after Twombly, so the idea that these two cases are somehow at war with each other or that we're not asking you to apply the actual pleading standard is just wrong. After all, in Rule 8E, which is part of the general rules of pleading just as much as Rule 8A is, Rule 8E says that pleading should be construed to do justice, and we think that's part of the standard here. And then I would just close by reiterating that we do have to step back and look at the whole picture. There's been a lot of nitpicking of particular allegations, but again, put yourself in Davina's shoes. If you're being called an angry black girl, if you're being targeted by racially insensitive jokes, it's reasonable to think that you're being racially harassed. It's certainly plausible to think that you're being racially harassed. And so we think at the pleading stage here that Davina has done enough to clear that bar. So as a result, we would ask this court to reverse and remand with instructions. May I ask you a question about the equal protection claim? Sure. That essentially is a 1983 claim, is that correct? Yes, Your Honor. And in order to have liability under 1983, you have to have a policy, so you have to have a policymaker, right? So who's the policymaker in this case? Is it the principal? Well, so you're referring specifically to the claim against the board? Right, yeah, I'm sorry. Yes, that's correct. For the individuals, you don't necessarily need the policy, you need the discriminatory intent. If they're individually involved and there's an equal protection violation, they're liable. But what about the board? Sure. So I think that this court has said previously that you can infer a policy based on the board's omissions and deliberate indifference. But I do think that, you know, here, Davina did allege that numerous discrimination complaints were filed with DOJ and the Office of Civil Rights, that the board had a pattern of dismissing these. And in Owens, that this court basically said that similar allegations about a number of reported and unreported cases and successful motions to suppress did state enough of a claim to get past the pleading stage for an equal protection claim. And which individuals do you think would be liable in a 1983 equal protection claim? I think that the two most obvious to us would be would be Principal Lyons and the Trudy Price O'Neill, who was the editor of the newspaper. A student? No, she was a teacher. Okay. She was a teacher who oversaw the students and the allegations in the complaint are that she oversaw the newspaper. She condoned the comments, labeled them as just jokes. There's a similar allegation to the effect for Principal Lyons. He also participated in one of the articles. We didn't mention that, but there's an article about him being called Dull Lion and giving his mixtapes out to the nearby cookout. He survived being a white man in Southeast Raleigh. Again, we think that's part of the culture of the school. But not anybody from the central administration? We do have allegations that the superintendent and a couple of members of the superintendent's office were also individually liable and we lay that out briefly at the end of our brief. Thank you. Thank you. Thank you, Your Honor. Mr. Seamers, we note that you were appointed. On behalf of the Fourth Circuit, we want to thank you. We appreciate that because we rely on lawyers like yourselves who take these cases and we appreciate it very much. And obviously, we note the able representation, Mr. Rawson, of your client as well. We'll come down to Greek Council and proceed to our last case.
judges: Roger L. Gregory, Pamela A. Harris, John A. Gibney Jr.